UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

ORDER

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Ronald Seaworth,

Plaintiff,

vs.

Red Lake County; Sheriff Mitch
Bernstein; Chief Deputy Sheriff
Brad Johnson; Louisville
Township Board as Follows:
John Stich, Chairman; Paul
Heng; Arley Schultz; Jean Beyer;
and Jack McKeever, all in their
personal and professional
capacities,

Defendants.          Civ. No. 06-3489 (RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I. Introduction

This matter came before the undersigned United States Magistrate Judge

pursuant to the consent of the parties, as authorized by the provisions of Title 28

U.S.C. §636(c), upon the parties' respective Motions for Summary Judgment, as well

as the Plaintiff's Motions for Contempt and Entry of Default Judgment.

A Hearing on the Motion for Summary Judgment by the Defendants Red Lake County ("the County"), Sheriff Mitch Bernstein ("Bernstein"), and Chief Deputy Sheriff Brad Johnson ("Johnson")(collectively, "the County Defendants"), was conducted on March 5, 2007, at which time, the Plaintiff appeared <u>pro</u> <u>se</u>, and the County Defendants appeared by Kenneth H. Bayliss, Esq.  At that same Hearing, the Plaintiff orally moved for Summary Judgment against the County Defendants.

A Hearing on the Motion for Summary Judgment of the Defendant Louisville Township Board ("the Board"), as well as the Defendants John Stich ("Stich"), Paul Heng ("Heng"), Arley Schultz ("Schultz"), Jean Beyer ("Beyer"), and Jack McKeever ("McKeever")("the Board Members"), as well as the Plaintiff's Motions for Summary Judgment, and for Sanctions against the Board and the Board Members, was conducted on June 21, 2007, at which time, the Plaintiff appeared <u>pro</u> <u>se</u>, and the Board Defendants appeared by Jon J. Cline, and Thomas C. Athens, Esqs.  For reasons which follow, we grant the Defendants' Motions for Summary Judgment, and deny the Plaintiff's respective Motions for Summary Judgment, and for Sanctions and Entry of Default Judgment.

## II.  Factual and Procedural Background

In the Plaintiff's Complaint, he alleges two (2) separate causes of action arising from distinct, and unrelated, events.  His first cause of action is premised upon the County Defendants' response to a tip, that had been provided by a concerned citizen, both prior, and subsequent, to the issuance of a Search Warrant.  See, Complaint, Docket No. 1, at pp. 3-4.  The second cause of action is premised upon the Board's issuance of a directive to the Plaintiff, which instructed him to remove his encroaching fence from a County Road's right-of-way.  Id. at pp. 4-5.  The Plaintiff contends that the Defendants' activities violated his civil rights, arising under the Fourth and Fourteenth Amendments to the United States Constitution, and that he is entitled to relief under Title 42 U.S.C. §1983.

### A.    Law Enforcement's Investigation of the Plaintiff's Property.

In October of 2004, a concerned citizen contacted the Red Lake County Sheriff's office, and spoke with Johnson, who is the Chief Deputy Sheriff with the Red Lake County Sheriff's Department ("Sheriff's Department").  The citizen allegedly informed Johnson that the Plaintiff had "moved a singlewide mobile home into a yard in the NW 1/4 of the NW 1/4 of Section #8 of Louisville Township," and that "all the doors and windows [of the mobile home] had been removed from the

home, yet the home was being heated year round."   Affidavit of Brad Johnson ("Johnson Aff."), Docket No. 46, at ¶4a.

On October 12, 2004, Johnson viewed the Plaintiff's property, and did not observe any vehicles in the yard.  Johnson approached the older model mobile home, walked onto the Plaintiff's land, noted that all of the mobile home's ("the storage mobile home's") windows and doors had been boarded up, and observed that the only way to enter the structure was by removing several attached panels with a screwdriver.  The Plaintiff contends the structure was utilized as a storage building. While standing outside the storage mobile home, Johnson heard a "humming noise, similar to that of a ballast."  Johnson examined the storage mobile home's electric meter, which was turning, and he recorded the meter reading.  Id. at ¶4b.  We note that the Plaintiff represents that there is another "primary residence" located on the property.  See, Plaintiff's Memorandum in Opposition, at pp. 10-11 ("[I]t is common knowledge to everyone that knows [Plaintiff] that the residence of the land is the travel trailer located right next to the driveway.").

Later that day, Johnson spoke with a neighbor of the Plaintiff, who reported that the storage mobile home had been placed on the property "a couple years back," but that the Plaintiff had abandoned his attempts to remodel the property, and that he had

subsequently moved to Colorado.  The neighbor reportedly observed that the storage mobile home was checked "at least once every few weeks."  <u>Johnson Aff.</u>, at ¶4c.

Afterwards, Johnson spoke with Kevin Brevik ("Brevik"), who is a Deputy with the Sheriff's Department, as well as an employee of a local heating/cooling business. Brevik told Johnson that he had installed a new furnace, and dehumidifier, in the storage mobile home in February of 2004, and that regular maintenance was unnecessary.  <u>Id.</u> at ¶4d.

On October 13, 2004, Johnson obtained an Administrative Subpoena for the electrical records associated with the mobile home.  <u>Id.</u> at ¶4e.  A Red Lake Electric company employee informed Johnson that the electrical records reflected that the electrical usage, over the preceding ninety (90) days, when compared to the preceding six (6)-month period, was "abnormal."  <u>Id.</u> at ¶4e.  The employee further opined that the electrical requirements for a furnace, dehumidifier, timer, and six (6) to eight (8) sets of fluorescent lights, would be consistent with the amount of electricity documented in the electrical records.  <u>Id.</u>

On October 14, 2004, Johnson applied for, and obtained, a Search Warrant for the inspection of the storage mobile home with a thermal imaging device.  <u>Id.</u> at ¶4f. Johnson avers that James Rystad ("Rystad"), who is a law enforcement officer who

is certified in the use of the thermal imaging device, viewed the storage mobile home with the thermal imaging device, and informed Johnson that there were "numerous spots showing heat transfer." Id. at ¶¶4g-4h. Rystad opined that the storage mobile home was "sealed excessively," and that "the heat transfer was escaping in such a way, when combined with the totality of the information at hand, as to cause him to believe there was a strong possibility that an indoor marijuana grow was located inside the home." Id. at ¶4i.

In his Application for a Search Warrant of the storage mobile home, which he drafted on October 15, 2004, Johnson included the preceding facts, and additionally averred as follows:

> Based on training and experience, your affiant is aware that people who manufacture marijuana prefer rural secluded places. That in the cases of indoor marijuana grows that are on a timer, that they need only be checked on every few weeks. Your affiant is also aware that people involved in illegal activity such as the manufacture of marijuana will cover windows and doors to eliminate anyone being able to visibly discover their activities. Also, that it takes approximately 90 day's [sic] for an indoor marijuana grow to cycle from start to harvest. The mobile home used would radiate irregular or excessive heat signatures if used for this type of activity.

Id., Exh. B, at p. 3.

The Application attested to Johnson's belief that the storage mobile home contained substances possessed without the authority of law, such as marijuana, cocaine, and methamphetamine; items consistent with the indoor manufacture of marijuana, such as grow lights, pots, potting soil, electric timers, fans, watering devices, harvesting equipment, climate control devices, scales, and packaging supplies; documents reflecting distribution and manufacture; and indicia of ownership. Id., at p. 1.

On October 15, 2004, a Red Lake County District Court Judge issued a Search Warrant, which concluded that probable cause existed to search the "[u]noccupied white colored single wide 14 x 70 mobile home w/ lean to." Id., Exh. C. Later that day, Johnson executed the Search Warrant at the storage mobile home, and "looked inside the mobile home without entering the home, saw that there was no marijuana growing operation, and went no further." County Defendants' Memorandum in Support of Summary Judgment, Docket No. 45, at p. 8, citing Johnson Aff., Exhs. D, E. No documents or materials were seized, and Johnson left a true and correct copy of the Search Warrant within the doorway of the home.

Pursuant to the Search Warrant, Johnson admittedly peered within the storage mobile home by "pull[ing] a piece of plywood off the front door and look[ing] through the glass of the door to view the inside of the mobile home," and observed no

evidence of any illegal activity.  Plaintiff's Response to Defendants' Answers, Docket

No. 6, Ex. C, at p. 1.  Afterwards, Johnson replaced the piece of plywood and wrote

"Nothing seized - unfounded" on the Receipt, Inventory, and Return sheet, which was

subsequently  returned with the Search Warrant.   See, Id., Ex. F, at p. 7.  No criminal

charges were ever filed against the Plaintiff, as a result of the information obtained

from the concerned citizen, or from Johnson's investigation.   Despite his repeated

requests, the County Defendants have steadfastly refused to provide the Plaintiff with

the informant's identity.

In his Complaint, the Plaintiff contends that the "Sheriff and Deputy Johnson

have * * *  deprived me of my right to redress a grievance against the person who filed

a false complaint/police report about me under color of law."  Complaint, at p. 3.

Previously, on February 20, 2005, the Plaintiff wrote to the Red Lake County District

Court,  and requested  that all materials relating to the Application for the Search

Warrant be destroyed, and that he be provided with the name of the informant.  See,

Letter to the Red Lake County District Court, Docket No. 19, Ex. D., at p. 1. The Red

Lake County Court ordered that all records, which related to the matter, be sealed and

destroyed, but did not direct, or address in the body of its analysis, the disclosure of

the tipster's identity.  See, Affidavit of Kenneth Bayliss, Docket No. 32-2, at p. 2.

B.    <u>The Plaintiff's Interactions with the Board and Board Members</u>.  By way of background, Tom Schmitz ("Schmitz"), who owns property directly adjacent to that of the Plaintiff, erected a fence ("the Schmitz fence") in 2003, along the easterly quarter of the northeast quarter of a parcel of land adjacent to a Louisville Township Road.  See, <u>Deposition of Tom Schmitz</u> ("<u>Schmitz Dep.</u>"), <u>Docket No. 71</u>, Exh. 8. In 2004, James Abeld ("Abeld"), who is a local farmer, complained to the Board that the Schmitz fence narrowed the road to such an extent that it was difficult to drive his farming combines on the road.  See, <u>Exhibits in Support of Defendants' Motion for Summary Judgment</u>, <u>Docket No. 71</u>, Exhs. 2 and 7.  The fence continued onto the Plaintiff's property.

The Board held discussions with Schmitz, regarding his fence, from 2004 to 2006.  By way of certified letters, dated April 5, 2006, Schmitz and the Plaintiff were given notice that the Board was to conduct a Special Meeting, at which the Board would discuss the need to remove the fences encroaching upon the County Road's right-of-way.  <u>Id.,</u> Exhs. 4 and 5.  The Plaintiff was subsequently directed to move the fence, and the Board agreed to demarcate the Board's right-of-way, on the Plaintiff's property, with flags.  See, April 13, 2006 Board Minutes, <u>Id.</u>, Exh. 2; Exh. 5.  In June of 2006, the Plaintiff subsequently removed the offending fence, except for a solitary

fence post that he could not remove from the ground.  The last remaining post was removed by the Board members in July of 2006, with the Plaintiff's consent.   See, Road Inspection of June 3, 2006, Board's Exhibits in Support of Defendants' Motion for Summary Judgment, Docket No. 71, Exh. 2.  Schmitz also removed his fence from his property, at a later date, pursuant to the Board's directives.

In addition to his substantive allegations against the Board, and the individual Board Members, the Plaintiff contends that the Board Defendants have failed to fully cooperate with discovery, as they have "willfully, intentionally, and with intent to deceive," responded to the Plaintiff's discovery requests with untrue statements.  The Plaintiff's primary complaint is that the Board members committed perjury, when they did not answer that another fence was erected on the Board's right-of-way -- namely, the Schmitz fence.  In turn, the Board Defendants represent that they consider the fence, which continues on both Schmitz, as well as the Plaintiff's property, as one fence, and that there was a good faith factual basis that supported their discovery responses.  The Plaintiff seeks the Entry of a Default Judgment, against the Board Defendants, as a sanction for their alleged failure to fully cooperate with discovery.

III.  Discussion

A.     The Parties' Motions for Summary Judgment.

       1.     Standard of Review.  Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the evidence, and in rendering credibility determinations.  See, Wallace v. DTG Operations, Inc., 442 F.3d 1112, 1118 (8th Cir. 2006), citing Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); Midwest Oilseeds, Inc. v. Limagrain Genetics Corp., 387 F.3d 705, 711 (8th Cir. 2004), cert. denied, 544 U.S. 977, 125 S. Ct. 1860 (2005).  Summary Judgment is appropriate when we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the nonmoving party, and we have found no triable issue.  See, Smutka v. City of Hutchinson, 451 F.3d 522, 526 (8th Cir. 2006), citing Mayer v. Nextel W. Corp., 318 F.3d 803, 806 (8th Cir. 2003); Eide v. Grey Fox Technical Servs. Corp., 329 F.3d 600, 604 (8th Cir. 2003); Philip v. Ford Motor Co., 328 F.3d 1020, 1023 (8th Cir. 2003).

       For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable Jury could return a Verdict for the nonmoving

party.  See, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Planned Parenthood of Minnesota/South Dakota v. Rounds</u>, 372 F.3d 969, 972 (8th Cir. 2004); <u>Fenney v. Dakota, Minnesota & Eastern R.R. Co.</u>, 327 F.3d 707, 711 (8th Cir. 2003).

As Rule 56(e) makes clear, once the moving party files a properly supported Motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute.  In sustaining that burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial." <u>Rule 56(e), Federal Rules of Civil Procedure</u>; see also, <u>Anderson v. Liberty Lobby, Inc.</u>, supra at 256; <u>Eddings v. City of Hot Springs, Ark.</u>, 323 F.3d 596, 602 (8th Cir. 2003).  Moreover, the movant is entitled to Summary Judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  <u>Celotex Corp. v. Catrett</u>, supra at 322; see also, <u>Forest Park II v. Hadley</u>, 408 F.3d 1052, 1057 (8th Cir. 2005); <u>Mercer v. City of Cedar Rapids</u>, 308 F.3d 840, 843 (8th Cir. 2002); <u>Hammond v. Northland Counseling Center, Inc.</u>, 218 F.3d 886, 891 (8th Cir. 2000).  No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving

party's case necessarily renders all other facts immaterial." <u>Celotex Corp. v. Catrett</u>, supra at 323; see also, <u>Sallis v. University of Minnesota</u>, 408 F.3d 470, 474 (8th Cir. 2005); <u>Davis v. U.S. Bancorp</u>, 383 F.3d 761, 768 (8th Cir. 2004); <u>Bell Lumber and Pole Co. v. United States Fire Ins. Co.</u>, 60 F.3d 437, 441 (8th Cir. 1995).

2.      <u>Legal Analysis</u>.   As the parties' respective Motions implicate different issues, we address them separately.

a.      <u>The County Defendants</u>.   In his Complaint, the Plaintiff contends that Johnson violated his Fourth Amendment rights when he entered upon his property to investigate the informant's tip -- prior to obtaining a Search Warrant -- and that any evidence, which was obtained by that entry, was illegally obtained, thereby rendering any subsequent Search Warrant tainted.  See, <u>Complaint</u>, at p. 3. On that basis, the Plaintiff contends that Johnson, as well as the other County Defendants, violated his Fourth Amendment rights.

The Fourth Amendment protects a home and its curtilage -- that is, the area immediately surrounding a dwelling -- from unreasonable warrantless searches.  See, <u>United States v. Weston</u>, 443 F.3d 661, 667 (8th Cir. 2006), cert. denied --- U.S. ---, 127 S.Ct. 417 (2006), citing <u>United States v. Dunn</u>, 480 U.S. 294, 301 (1987). However, our Court of Appeals has also recognized that "no Fourth Amendment

13

search occurs when police officers who enter private property restrict their movements to those areas generally made accessible to visitors such as driveways, walkways, or similar passageways." Id. at 667, quoting United States v. Reed, 733 F.2d 492, 501 (8th Cir. 1984). As such, "[t]he Fourth Amendment protects a home and its curtilage – the area immediately surrounding a dwelling house -- from unreasonable warrantless searches," but "this protection does not extend past the curtilage." United States v. Gerard, 362 F.3d 484, 487 (8th Cir. 2004), cert. denied 543 U.S. 928 (2004).

In determining whether an area lies within the curtilage, we examine the following four factors: "the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." United States v. Dunn, 480 U.S. 294, 301 (1987); see also, United States v. Gerard, supra; United States v. Mooring, 137 F.3d 595, 596 (8th Cir. 1998), cert. denied 525 U.S. 902 (1998). However, "[w]e do not apply these factors mechanically, but use them to consider if the [Plaintiff's] [property] 'is so intimately tied to the [house] itself that [the property] should be placed under the [house's ] "umbrella" of Fourth Amendment protection.'" United States v. Gerard, supra at 487, quoting United States v. Dunn, supra at 301.

14

Our initial analysis, therefore, centers upon whether Johnson  intruded upon the curtilage of the Plaintiff's home and, if so, whether that intrusion was reasonable. Accordingly, we must decide whether the area surrounding the storage mobile home, which Johnson approached by entering upon the Plaintiff's property prior to obtaining a Search Warrant, is considered within the curtilage of the Plaintiff's home.   The "central component" of that analysis is "'whether the [trailer] harbor[ed] the intimate activity associated with the sanctity of [the defendants' house] and the privacies of [their] life.'"   United States v. Gerard, supra at 487, quoting United States v. Dunn, supra at 300.

        1.      <u>Whether the Area Surrounding the Storage
Mobile Home was Curtilage.</u>

The Plaintiff concedes that the storage mobile home, or trailer, which Johnson approached, was not his primary residence.   Instead, he contends that it "would have been impossible to mistake this storage trailer (old mobile home) for the residence due to the fact it is common knowledge to everyone that knows Petitioner that the residence of the land is the travel trailer located right next to the driveway."   <u>Plaintiff's Memorandum</u>, on p. 10.  While the evidentiary value of the

Plaintiff's representations is dubious, we find that it is undisputed that the mobile home, which Johnson approached, was not the Plaintiff's residence.

The Plaintiff argues that Johnson entered upon the curtilage of his home, and "stood along side [the old mobile home], which does not have a public sidewalk nor a public path going to it, using his sense of hearing to search and noticed a humming noise." Plaintiff's Memorandum in Opposition, at p. 3. The Plaintiff describes the area, which Johnson allegedly entered, as "the back yard." Id. at p. 5. However, the Plaintiff concedes that "[t]he property in question borders County Road 3, and as such, is NOT a 'secluded place' as listed in [Johnson's] affidavit." Id. at pp. 7-8. The Plaintiff has provided various pictures of the structure -- purportedly from three (3) years prior to the events at issue -- as well as more recent printouts of maps and images generated by an internet website. See, Plaintiff's Exhibits, Docket No. 51, Exh. C. Nevertheless, it is unclear from the pictures, where, exactly, Johnson was located when he heard the buzzing sound, and observed the exterior of the mobile home in question.

We find that our Court of Appeals' decisions, in United States v. Gerard, supra, and  United States v. Mooring, supra, closely guide our analysis of whether the area surrounding the storage mobile home should be considered curtilage.  In Gerard, an

16

officer conducted a warrantless search of a garage, which was located on a farm.  The

Court noted that, while the farmhouse and the garage were in "close proximity[,] [t]he

distance alone * * * is not determinative that the garage should be treated as an adjunct

of the house."  United States v. Gerard, supra at 487.  The Court further noted that

there was a fence which enclosed the farmhouse, but not the garage, and the Court

rejected the argument that a "natural enclosure of trees surrounding both the farmhouse

and the garage mark the home's enclosure and that the land within it is protected by

the home's curtilage," because "[t]he fact that one's view from the road of the garage

is obscured by trees does not itself establish that the garage should be included within

the farmhouse's Fourth Amendment protection."  Id. at 487-88.

In addition, the defendant's garage was separated from the farmhouse by a

fence, which enclosed the farmhouse, and a driveway.  Id.  With respect to the third

factor, the Court found that "reasonable officers would expect that the garage was

likely to be used for private activities," when the defendant parked his vehicles there,

locked the garage's doors,  had electricity wired to the garage, and where the garage

was located close to the farmhouse.  Id.  Finally, while the Court noted that the

defendant had taken "steps to prevent casual onlookers standing in open fields from

viewing inside the garage," by having it set back and facing away from the road, by

17

placing locks on all of the doors to the garage, and by obscuring the windows, the Court also found that the defendant's "driveway led from the road directly to the garage," that "[n]o internal fences prevented persons from approaching the garage," that the defendant "posted no signs excluding strangers from access to the garage," and that "the garage was not completely blocked from view of members of the public driving down the street." Id. Although there were factors to support either view, the Court upheld the conclusion that the garage was not within the curtilage, and therefore, that the warrantless search did not violate the Fourth Amendment. Id.

Similarly, in United States v. Mooring, supra, an officer -- without first obtaining a Warrant -- entered farmland, approached a barn, and identified the barn as a heat source by using a thermal imager. He also heard a buzzing noise, which he recognized as emanating from electrical equipment used in growing marijuana plants. In its review of the four relevant factors, the Court noted that "[t]he barn's distance of forty to fifty yards from the farmhouse neither clearly favors nor disfavors including the barn within the farmhouse's curtilage." United States v. Mooring, supra at 596. Further, while the defendants argued that "a tree line one hundred yards from the barn marked their farmhouse's curtilage like a fence," the Court found that "nothing in the record suggests that the trees satisfy the requirements of an enclosure around the barn." Id.

As to the third factor, the Court observed that the barn was used only to warehouse items, and grow marijuana, and that "objective information," such as the high electrical bills, which were consistent with the marijuana grow operation, the unconcealed heat emissions, the audible noises from the grow equipment, and the absence of signs or fences, suggested that the barn was not used "for intimate activities of the home." Id. at 596-97, quoting United States v. Dunn, supra at 302. Finally, the Court found that, "although the officer's obscured view of the barn from a public road about a quarter of a mile away favors including the barn in the curtilage, * * * this fact in itself does not establish the barn should be included within the farmhouse's Fourth Amendment protection." Id. at 597. Ultimately, the Court affirmed the finding that the barn was located outside of the curtilage, and that the search was not improper.

Here, the Plaintiff argues that the only permissive area, from which Johnson could approach the Plaintiff's residence, or storage mobile home, was the driveway. See, Plaintiff's Memorandum, at p. 15. However, we find that the storage mobile home is outside of the curtilage that surrounds the Plaintiff's residence. The Plaintiff concedes that the area surrounding the storage mobile home was not secluded, and that no barriers, or signs, were erected to warn, or to prevent others, from viewing the

exterior of the storage mobile home.  Id., at pp. 7-8; Plaintiff's Exhibits, Exh. C.  It is unclear, from this Record, what the actual distance is between the storage mobile home, and the primary residence, but it appears to be less than 100 feet, as related by the Plaintiff -- which is a neutral factor for purposes of our analysis.  Id. at p. 8.

The Plaintiff has provided no evidence that the storage mobile home was used for the "intimate activities of home," as all of the mobile home's windows, and doors, were boarded up, and the mobile home, and the surrounding yard, showed signs of little recent maintenance, or residence.  See, Johnson Aff., at ¶4(b).  Indeed, the Plaintiff concedes that it was "common knowledge to everyone that knew Petitioner that the old mobile home was a storage building."  Plaintiff's Memorandum, at pp. 10-11.  Accordingly, we find no Fourth Amendment violation to arise from Johnson's intrusion upon the Plaintiff's property, as the storage mobile home was not included within the curtilage of the Plaintiff's home.

In addition, we find that the Plaintiff cannot maintain a claim which asserts a Fourth Amendment violation, arising out of Johnson's reading of the electric meter. Since utility employees are often required to enter the property to take a reading of an electric meter, Courts have generally recognized that those areas are not to be considered curtilage, as landowners fully expect unannounced visitors to enter a

landowner's property to read the meter.  See, <u>United States v. Cousins</u>, 455 F.3d 1116, 1123 (10th Cir. 2006), cert. denied --- U.S. ---, 127 S. Ct. 162 (2006) (summarizing Fourth Amendment cases where law enforcement intruded upon areas claimed to be curtilage near electric meters).  We see no basis to support a conclusion that the area, which surrounds the electric meter, would otherwise be considered curtilage, given the lack of barriers, or other indicia of seclusion, and in view of the reasonable expectation that visitors would access the area in order to read the electric meter.

Accordingly, we find no Fourth Amendment violation in Johnson's initial intrusion onto the Plaintiff's property, given that the area surrounding the mobile home is not curtilage.

2.   <u>Reasonableness of the Intrusion Upon the Plaintiff's Property</u>.

Even if we had determined that Johnson had intruded upon the curtilage that surrounds the Plaintiff's residence, we would still find no constitutional violation as a result of that intrusion.  Our Court of Appeals has held that, "[w]here a legitimate law enforcement objective exists, a warrantless entry into the curtilage is not unreasonable under the Fourth Amendment, provided that the intrusion

upon one's privacy is limited." United States v. Weston, supra at 667, citing United States v. Raines, 243 F.3d 419, 421 (8th Cir. 2001), cert. denied 532 U.S. 1073 (2001).

In this respect, our analysis is guided by several recent decisions of our Court of Appeals.  In Raines, a law enforcement officer entered onto a defendant's property without permission, or a Search Warrant, in an attempt to serve process on an individual who was believed to be there.  After knocking on the front door and receiving no response, the officer proceeded to the back of the house, in the event that the inhabitants were outside on what was described as "a pleasant summer evening." While walking towards the back of the house, the officer discovered marijuana plants growing along the side of the residence.  The officer immediately left the residence and obtained a Search Warrant, based upon his observations at the house.  The Court found the marijuana plants had been lawfully discovered, since the officer had a legitimate purpose in attempting to serve process upon an individual believed to be present at the dwelling, and that the law enforcement officer's intrusion into that area was reasonable, and therefore, lawful.  See United States v. Raines, supra at 421.

In Weston, the events are even closer to those presented here.  There, law enforcement, acting upon a tip regarding stolen vehicles, drove on the defendant's driveway, and "proceeded beyond the split-rail fence of the mobile home," as they

"intended to announce their presence and ask [the defendant] about the stolen vehicles." United States v. Weston, supra at 664.  They approached the front door of the residence, and observed propane tanks, which appeared to contain anhydrous ammonia -- which is an ingredient used in the manufacture of methamphetamine.  Our Court of Appeals found that "the entry of Weston's curtilage was a limited intrusion upon his privacy interests in furtherance of a legitimate law enforcement objective." Id. at 661.  However, there, law enforcement appeared to have stayed on the defendant's driveway, and approached the front door.

Under the facts before us, Johnson was following a tip, which had been provided by a concerned citizen, that the storage mobile home on the Plaintiff's property was being used to grow controlled substances and, in particular, a marijuana grow, in what, from all appearances, was an abandoned, or boarded up, mobile home. Johnson entered the Plaintiff's property, and went to investigate by approaching the storage mobile home.  It is unclear if Johnson attempted to ascertain whether anyone was residing in either the storage mobile home, or the Plaintiff's "primary residence," at the time of Johnson's visit to the Plaintiff's property.

The Defendants contend that Johnson merely went to the Plaintiff's property, viewed the exterior of the mobile home so as to confirm the information provided by

23

the informant, and took a reading of the electric meter, which was, purportedly, located "between the end of the driveway and the mobile home." Defendants' Reply Memorandum in Support of Summary Judgment, at p. 5.  Johnson did not open or traverse a gate, or other barrier, in order to gather his observations, and he did not attempt to enter the mobile home.  The Plaintiff does not highlight any steps that he took which would shield the exterior of the mobile home from view, nor any actions that would demonstrate that the area, upon which Johnson intruded, was intended to be kept private.  Accordingly, in keeping with Weston, and Raines, we find that, even if any limited intrusion upon the Plaintiff's curtilage occurred, those intrusions were incident to a legitimate law enforcement activity, in following a citizen's tip, and were reasonable, and not a constitutional violation.

Furthermore, we note that all of activities, which were undertaken by Johnson after his first entry upon the curtilage, presents no constitutional difficulty, since a Judicial Officer determined that there was probable cause for further investigation and, based upon the information Johnson had provided, a Search Warrant was issued and executed, which expressly permitted Johnson to enter the Plaintiff's storage mobile home.  The Plaintiff challenges the Application, which Johnson provided in support of acquiring a Search Warrant, as the Affidavit contained "outright lies, false

statements, and illegally/unlawfully gotten information." <u>Plaintiff's Memorandum</u>, at p. 4. However, he never specifies what information, that is contained in the Affidavit, was false, nor any illegality in acquiring the information, other than Johnson's incursion upon the Plaintiff's property, which we have already found to be permissible. Accordingly, we find no constitutional violations resulting from Johnson's investigation activities, which occurred after his initial entry onto the Plaintiff's property, and Johnson is entitled to Summary Judgment, as to the Plaintiff's claims.

3.     <u>Plaintiff's Claims Against the County and Bernstein</u>.

Similarly, we find that the County, and Bernstein, are each entitled to Summary Judgment, as to the Plaintiff's Section 1983 claims. As an initial matter, Bernstein was not the Red Lake County Sheriff, or Johnson's supervisor, at the time of Johnson's investigation, as he did not take office until October 1, 2005. See, <u>Johnson Aff.</u>, at ¶3. Moreover, the doctrine of <u>respondeat superior</u> does not apply to Section 1983 claims, which means that a defendant cannot be held vicariously liable for the alleged constitutional misdeeds of an employee or subordinate. See, <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 694 (1978); <u>Miller v.</u>

Compton, 122 F.3d 1094, 1100 (8th Cir. 1997).   Accordingly, we grant Summary

Judgment in favor of Bernstein, in his individual capacity.[1]

      As to the County, and any claims lodged against Johnson or Bernstein

in their official capacities, the Plaintiff has failed to specify any policy, practice, or

custom, which would provide a viable Section 1983 claim against the County.   "A

---

[1]Since we conclude that the individual County Defendants -- namely, Johnson
and Bernstein -- committed no violation of the Plaintiff's constitutional rights, as he
has alleged in his Complaint, we have no occasion to address the question of the
County Defendants' qualified immunity.   As our Court of Appeals explained, in
Hinshaw v. Smith, 436 F.3d 997, 1004 (8th Cir. 2006):

> Qualified immunity protects public officials from personal
> liability under §1983 when "their conduct does not violate
> clearly established statutory or constitutional rights of which
> a reasonable person would have known."   Harlow v.
> Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d
> 396 (1982)(internal marks omitted).   We first address
> whether the facts alleged show that the state actor's
> conduct violated a constitutional right.   Davis v. Hall, 375
> F.3d 703, 712 (8th Cir. 2004).   If that threshold question is
> answered in the negative, we need not proceed further, as
> the defendant is entitled to qualified immunity.

See also, Davis v. Hall, 375 F.3d 703, 712 (8th Cir. 2004)("If the answer to this first
inquiry is no, courts do not delve further into the qualified immunity inquiry," but
"instead, the defendant is entitled to qualified immunity, and the suit is not permitted
to proceed."), citing Saucier v. Katz, 533 U.S. 194, 200 (2001).

As a consequence, our analysis of the applicability of qualified immunity to the
conduct of either Johnson, and Bernstein, proceeds no further.

municipality cannot be held liable solely because it employs a tort feasor – or in other words, a municipality cannot be held liable under §1983 on a respondeat superior theory." Kuha v. City of Minnetonka, 365 F.3d 590, 603 (8th Cir. 2004), quoting Monell v. Department of Social Services, supra at 691.

A municipality, such as the County, can be liable, under Section 1983, if a plaintiff can prove that the municipality has adopted some policy, custom, or practice, that caused a violation of the plaintiff's Federal constitutional rights.  See, Lund v. Hennepin County , 427 F.3d 1123, 1125 (8th Cir. 2005); City of Canton v. Harris, 489 U.S. 378, 386-87 (1989); see also, Angarita v. St. Louis County, 981 F.2d 1537, 1546 (8th Cir. 1992)("A municipality may be held liable under Section 1983 only if a municipal custom or policy caused the deprivation of [a] right protected by the constitution or federal laws"); Williams v. Little Rock Municipal Water Works, 21 F.3d 218, 223 (8th Cir. 1994)("[M]unicipal governments can be held liable for the acts of their employees in contravention of the civil rights of individuals only upon a showing that a 'policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers' is the motivating force behind the acts of those employees"), quoting Monell v. Department of Social Services, supra at 690.

Liberally construed, the Plaintiff's Complaint alleges that his constitutional rights were violated when Johnson followed up on the concerned citizen's tip, and Johnson went to the Plaintiff's property without first obtaining a Search Warrant.[2]  However,

---

[2]It is unclear whether the Plaintiff alleges a State tort for libel, slander, or defamation.  See, <u>Complaint</u>, at p. 3 ("Deputy Johnson not only trespassed upon private property to obtain unlawful evidence, he libeled my name in the public record.").  However, throughout these proceedings, the Plaintiff has continued to assert that he only seeks relief pursuant to Federal law -- namely, Section 1983.  See, <u>Plaintiff's Motion to Strike</u>, <u>Docket No. 20</u>, at pp. 3-4.  Moreover, he never presents an argument, in either his responsive Memorandum, or at the Hearing, that he seeks relief for slander, libel, or defamation.  Instead, it appears that the Plaintiff was using the term "libel" as mere rhetoric.

To the extent that the Plaintiff is presenting a State claim against Johnson, we find that any such claims against Johnson are not cognizable, since the statements, ostensibly, were contained in an Affidavit in support of a Search Warrant.  The Minnesota Supreme Court has determined that police officers possess "absolute immunity from a civil suit in defamation for the statements made in the written police report."  <u>Carradine v. State</u>, 511 N.W.2d 733, 736-37 (Minn. 1994).  We find that the same arguments, which undergirded a finding of immunity in <u>Carradine</u>, are present here, where a police officer filled out an Application for a Search Warrant, since filling out Affidavits in support of Warrant Applications is a primary function of law enforcement, and therefore, an immunity to charges of libel or defamation in preparing Warrant Applications fosters a vigorous, and fearless effort, to draft detailed, accurate, and thorough reports.  <u>Id.</u>

Moreover, it is unclear which of Johnson's averments, which were made in the Application, are considered to be defamatory by the Plaintiff.  Johnson averred to his belief, that there was probable cause that the storage mobile home housed a marijuana grow and, when he investigated pursuant to a Search Warrant, he determined that the confidential tip was "unfounded."  Accordingly, to the extent that the Plaintiff asserts a State tort claim, based upon the statements made in Johnson's Affidavit, which were

he does not allege that the conduct of the persons, who allegedly committed those acts, was performed pursuant to a policy or custom of the County, and he has provided no evidentiary showing to support his assertion that the County failed to supervise its employees.  See, <u>Reasonover v. St. Louis County, Missouri</u>, 447 F.3d 569 (8th Cir. 2006).  As such, he has failed to allege any facts, which would give rise to a viable Section 1983 claim against Red Lake County.  Therefore, we find that the County and the individual County Defendants, in their official capacities, are also entitled to Summary Judgment.[3]

---

made in the furtherance of effectively fulfilling his duties as a law enforcement officer, we grant Summary Judgment, in favor the County Defendants, on those claims as well.

[3]We note, in passing, that the Plaintiff's Complaint alleges that the acts of the Defendants have also "deprived me of my right to redress a grievance against the person who filed a false complaint/police report about me under color of law." <u>Complaint</u>, at p. 4.  However, he has not shown how the refusal to provide the concerned citizen's identity is a violation of any of the Plaintiff's civil rights, or has otherwise impeded his ability to access the Courts.  He has cited no authority, or constitutional provision, which would entitle him to the informant's identity, which would render the Defendants' refusal to provide that information impermissible.

Moreover, on February 20, 2005, the Plaintiff wrote to the Red Lake County District Court, and requested that all materials relating to the Application for the Search Warrant be destroyed, and that he be provided with the name of the informant.  See, <u>Letter to the Red Lake County District Court</u>, <u>Docket No. 19</u>, Ex. D., at p. 1.  The Red Lake County Court ordered that all records, which related to the matter, be sealed and destroyed, but did not direct, or address in the body of its discussion, the disclosure of the tipster's identity.  See, <u>Affidavit of Kenneth Bayliss</u>, <u>Docket No. 32-</u>

b.   <u>The Louisville Board Defendants</u>.   In his Complaint, the Plaintiff asserts that the Board, and its individual Members, violated his civil rights, as actionable under Section 1983, for "selective harassment/prosecution under color of law," by sending the Plaintiff a letter, which requested that he remove the fence encroaching upon the County Road's right-of-way.   He claims disparate treatment, since other Louisville Township residents have not been directed to remove their fences, from other easements held by the Board, and he seeks monetary damages, as well as injunctive relief -- namely, that the Board hire a surveyor, move the road, and remove "ALL obstacles from the right-of-way in Louisville Township, all at their own personal expense."   <u>Complaint</u>, at pp. 6-7.   We find that the Plaintiff has not presented a viable Equal Protection claim, and accordingly, that the Board Defendants are entitled to Summary Judgment.[4]

---

<u>2</u>, at p. 2.   Given that the Red Lake Court ordered the destruction of any documents reflecting the identity of the informant, pursuant to the Plaintiff's own request, it is unclear how the County Defendants should be made to provide the identity of the informant, absent an appeal of the State Court's 2005 Order, which declined to provide the Plaintiff with the names of the informant, prior to the Record's destruction.   Accordingly, we grant Summary Judgment as to any claims arising out of the Defendants' refusal to provide the name of the informant, as well.

[4]We find it unclear whether the Plaintiff is also alleging that his Due Process rights, as protected by the Fourteenth Amendment, were violated by the Board's actions.   However, we discern no such violation, as he has not demonstrated that he

The Fourteenth Amendment's Equal Protection Clause requires Government actors to treat persons, who are similarly situated, alike.  See, <u>City of Cleburne v. Cleburne Living Center, Inc.</u>, 473 U.S. 432, 439 (1985); see also, <u>Creason v. City of Washington</u>, 435 F.3d 820, 823 (8th Cir. 2006).  The crux of the Plaintiff's cause of action against the Board Defendants is that he was deprived of Equal Protection, when he was "singled out," by the Board, to remove his fence from the right-of-way, while other residents were not similarly required to move their fences.

Since the Plaintiff has not alleged that he is a member of a suspect class, or that a fundamental right has been infringed, the Plaintiff's claim is subject to rational basis

---

was deprived of a recognized property interest, by the Board's request that the Plaintiff move his fence from the right-of-way, or that he was deprived of sufficient procedural due process protections in his ability to challenge that government action.

We note that, under Minnesota law, "[t]he town board has authority within the 66-foot right-of-way to * * * regulate erosion, drainage, public nuisances, and matters of public interest."  <u>Minnesota Statutes Section 164.36</u>.  The Plaintiff admits that he voluntarily removed the fence, that he recognized that the Board has the ability to maintain its right-of-way, and that he gave permission to the Board to remove the last remaining fence post.  See, <u>Deposition of Ronald Seaworth</u>, <u>Defendants' Exhibits in Support of Summary Judgment</u>, <u>Docket No. 71</u>, Exh. 1, at pp. 31, 34, 45.  Furthermore, the Plaintiff was provided notice of the meeting that related to the removal of his fence,  and the Record is uncontroverted that he subsequently agreed to that removal.  Accordingly, to any extent that the Plaintiff claims a procedural due process right, we find that the Defendants are entitled to Summary Judgment on any such claims.  See, <u>Vaughn v. City of North Branch</u>, 2001 WL 1640135,  at *7 (D. Minn., October 30, 2001).

31

review.  See, <u>Hawkeye Commodity Promotions, Inc. v. Vilsack</u>, 486 F.3d 430, 442

(8th Cir. 2007)("When an equal protection claim is neither based on a 'suspect class'

or grounded in a fundamental right, it is subject to a rational basis review."), quoting

<u>Gillmore v. County of Douglas, State of Nebraska</u>, 406 F.3d 935, 937 (8th Cir. 2005).

Accordingly, in challenging the governmental action on Equal Protection grounds, the

Plaintiff must "negate 'every conceivable basis which might support the

classification.'"  <u>Hawkeye Commodity Promotions, Inc. v. Vilsack</u>, supra at 443,

quoting <u>Gillmore v. County of Douglas, State of Nebraska</u>, supra at 939.  "It is

recognized law that a class-of-one claimant may prevail by showing '[h]e has been

intentionally treated differently from others similarly situated and that there is no

rational basis for the difference in treatment.'"  <u>Barstad v. Murray County</u>, 420 F.3d

880, 884 (8th Cir. 2005); citing <u>Village of Willowbrook v. Olech,</u> 528 U.S. 562, 564

(2000).

Here, both the Plaintiff, as well as Schmitz, were directed to remove their fences

from the right-of-way, by way of a certified letter.  The Board underscores that its

decision was premised upon the complaint, that it had received from a person who had

attempted to utilize the road, and who had voiced his concern that the fences provided

insufficient berth to allow farming combines to pass by the Plaintiff's property.  See,

32

Board Minutes of March 14, 2006, Docket No. 71, Exh. 2.   While the Plaintiff contends that he was singled out, from all of those persons whose fences encroach upon the Board's easements, we find that he has not provided any evidence that the Board treated similarly situated persons differently.

The only two (2) persons, who appear in the Record, and who owned fences that allegedly encroached upon the road's right-of-way, and whose fences generated a complaint to the Board, were the Plaintiff and Schmitz -- each of whom received a letter from the Board, which directed them to remove their fence. Also, given the Board's authority, arising under Minnesota law, we find that the Board had a rational basis for directing the Plaintiff to remove his fence -- namely, to safely maintain the County Roads in light of a complaint.   See, Minnesota Statutes Section 164.36 ("The town board has authority within the 66-foot right-of-way to * * * regulate erosion, drainage, public nuisances, and matters of public interest.").   Lastly, we find no basis to sustain the Equal Protection claim, since the Plaintiff voluntarily removed the fence, and gave his express permission for the Board to remove the last remaining fence post. While the Plaintiff may, in hindsight, wish that he had challenged the Board's directive, prior to removing the fence voluntarily, the fact that he regrets his decision now -- especially in light of his admission that the Board was entitled to do so -- does not

demonstrate that his right to Equal Protection, under the law, was violated.  As a consequence, we find no showing, however slight, that the Board's actions were violative of any constitutional, or Federal right, and therefore, we grant the Board Defendants' Motion for Summary Judgment.

B.   The Plaintiff's Motions for Sanctions.

The Plaintiff seeks sanctions -- namely, an Entry of Default Judgment -- against the Board, and the Board Members, for what he considers a failure to cooperate fully and truthfully in discovery -- namely, their responses to the Plaintiff's Second Set of Interrogatories, and Request for Admissions.  The Plaintiff questions the veracity of their discovery responses, while the Board Defendants contend that their answers merely reflect their interpretation, and recollection of the events at issue, and that the Plaintiff is simply dissatisfied that they do not adopt his version of the facts, which they regard as erroneous.

Given the totality of the Record presented, we find that the Plaintiff has not demonstrated that the imposition of sanctions is appropriate.  As an initial matter, it appears that the Plaintiff has not satisfied his obligation to responsibly "meet and confer" with the Defendants, since the Plaintiff has provided no certification to that effect, and our Record contains nothing to suggest that an attempt was made to

resolve the alleged deficiencies in the Board Defendants' discovery responses, prior to the filing of this Sanctions Motion.   See, <u>Rule 37(a)(2)(B), Federal Rules of Civil Procedure</u>; <u>D. Minn LR 37.1, Local Rules of the United States District Court for the District of Minnesota</u>.

Furthermore, the Board Defendants contend that, with respect to the bulk of the Plaintiff's assertions, they have either answered truthfully, or are willing to clarify, and supplement, their responses.  As we have stated elsewhere, "we have no means to test the veracity of such avowals, other than to appropriately sanction a recalcitrant party for failing to responsibly honor its discovery obligations."  <u>Lumber v. PPG Industries, Inc.</u>, 168 F.R.D. 641, 643 n. 1 (D. Minn. 1996).  Accordingly, given our inability, at this stage of the litigation, to decide the veracity of the Board Defendants' responses, as well as the Plaintiff's failure to "meet and confer," in an attempt to resolve the dispute without the Court's intervention, prior to bringing this Motion, we deny the Plaintiff's Motion for Sanctions and for Entry of Default Judgment.

In sum, finding no genuine issues of disputed material fact, which would preclude the grant of Summary Judgment, and for the reasons stated, we direct that Judgment be entered in the Defendants' favor, and that the Plaintiff's Complaint be dismissed with prejudice.

NOW, THEREFORE, It is --

ORDERED:

1.      That the County Defendants' Motion for Summary Judgment [Docket No. 43] is GRANTED.

2.      That the Board Defendants' Motion for Summary Judgment [Docket No. 63] is GRANTED.

3.      That the Plaintiff's Motion for Summary Judgment [Docket No. 55] is DENIED.

4.      That the Plaintiff's Motion for Sanctions and for Entry of Default Judgment [Docket No. 58] is DENIED.

5.      That the Clerk of Court should enter Judgment for the Defendants, dismissing the Plaintiff's Complaint with prejudice.

BY THE COURT:

Dated:  July 2, 2007                           s/Raymond L. Erickson
                                               Raymond L. Erickson
                                               CHIEF  U.S.  MAGISTRATE JUDGE